

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LINDA MARIE GARNER, | No. 13-35797 |
| Plaintiff - Appellant, | D.C. No. 2:12-cv-02045-MAT |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Mary A. Theiler, Magistrate Judge, Presiding

Argued and Submitted September 2, 2015
Seattle, Washington

Before: HAWKINS, GOULD, and N.R. SMITH, Circuit Judges.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appellant Linda M. Garner ("Garner") appeals from the district court judgment upholding the final administrative decision of the Commissioner of Social Security, finding Garner was not disabled. We affirm.

Garner alleges that according to Social Security Ruling ("SSR") 13-2P, the administrative law judge ("ALJ") improperly analyzed whether her drug and alcohol abuse ("DAA") was a material factor contributing to her disability. SSR 13-2P, 2013 WL 621536. However, SSR 13-2P has an effective date of March 22, 2013, whereas Garner's administrative hearing and final agency decision occurred in 2011; we cannot assign error to the ALJ for failing to comply with a regulation that did not exist at the time. In addition, Garner has waived this issue by failing to raise this argument in the district court. *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).

Even if we were to consider the issue in our discretion, *see id*. at 973, SSR 13-2P did not alter, but merely codified and clarified, policies that existed at the time of Garner's hearing, including the agency's "longstanding policy that the claimant continues to have the burden of proving disability throughout the DAA materiality analysis." SSR 13-2P, 2013 WL 621536, at *4 (Question 5(a)); *see also Parra v. Astrue*, 481 F.3d 742, 748-50 (9th Cir. 2007). The ALJ adhered to the DAA evaluation process that was later outlined in SSR 13-2P, and substantial evidence supported the ALJ's determination that Garner's DAA was material to the disability

finding. The ALJ considered medical treatment notes indicating cocaine use exacerbated Garner's mental symptoms, as well as her own testimony that she was completely unable to function while using cocaine. There was also evidence that when Garner was abstaining from cocaine use, she was performing much better mentally and socially. For instance, she kept a fairly regular schedule of weekly bible study and AA meetings, and she chaired the AA meetings two nights a week.

In determining Garner's residual functional capacity ("RFC") apart from the DAA, the ALJ offered "specific and legitimate reasons" for rejecting or giving limited weight to the opinions of Garner's treating and examining physicians. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Dr. Birdlebough's evidence consisted only of diagnosis and treatment notes, rather than an actual opinion regarding Garner's remaining functional abilities in the workplace. Dr. Thompson was a non-examining physician, and offered only an equivocal opinion that Garner's impairments "may meet" SSI listings.

The ALJ gave limited weight to Dr. Copeland's evaluation because the conclusions were provided only on a check-box form without elaboration and were inconsistent with Garner's daily activities. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Nonetheless, the ALJ did include many of Copeland's

limitations in the RFC hypothetical posed to the vocational expert ("VE"). Moreover, the ALJ properly explained her reasons for rejecting some of Dr. Copeland's opinions while accepting others. The ALJ rejected Dr. Copeland's conclusions that either were not explained adequately or were inconsistent with Garner's daily activities, but accepted those that were supported by the evidence. For instance, Dr. Copeland's accepted conclusion that Garner had "adequate cognitive functioning" was based on Garner's mental status exam and performance on cognitive testing.

The ALJ also gave "germane reasons" to discount Garner's "other source" evidence. *See id.* at 1114. The ALJ gave limited weight to Ms. Elsner's evaluation, which was made at the very outset of treatment and based on a limited opportunity to know the claimant. The ALJ discounted therapist Allen's singular GAF score from October 2009, which provided only a snapshot impression and not a long-term prediction of RFC.

The ALJ also offered "germane reasons" for discounting Garner's lay witness evidence. Neither witness's statement actually supported Garner's claim for disability. Garner's husband's statement focused on her physical limitations and did not describe any mental limitations beyond those already included in the ALJ's determination of Garner's RFC. The other statement, by the operations assistant of

4

a community recovery clinic, only showed Garner had been in a substance abuse treatment program, it did not affect Garner's RFC.

The ALJ offered clear and convincing reasons for not fully crediting Garner's own testimony as to the intensity, persistence and limiting effects of her symptoms. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ noted Garner's participation in numerous social events each week, such as bible studies and AA meetings (undermining her claims of severe difficulty functioning in social settings), inconsistent statements about when her drug use ended, a pattern of not following treatment recommendations, and inconsistency with some of the medical opinions. *See id.*; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Finally, the ALJ did not err by failing to incorporate certain limitations into the hypothetical questions posed to the VE. The ALJ properly followed the Commissioner's Program Operations Manual System, which directs adjudicators to use the narrative in Section III (Functional Capacity Assessment) of form SSA-4734-F4-SUP to ascertain a claimant's RFC, rather than the check-boxes in Section I (Summary Conclusion). POMS DI 25020.010 at B.1., *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010. The ALJ did not need to specifically identify each "moderate" limitation noted in Section I for the VE because these had already been incorporated into the workplace limitations narrative of Section

5

III.  *Id.* ("It is the narrative written by the psychiatrist or psychologist in Section III . . . that adjudicators are to use as the assessment of RFC").  Accordingly, there was no error.

**AFFIRMED.**